**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| In the Matter of: | **:** |
| | **:** |
| | **:**   **Chapter 7** |
| **BLUE RIDGE ARSENAL** | **:** |
| **AT WINDING BROOK, LLC,** | **:** |
| | **:**   **Case No. 17-13138-BFK** |
| **Debtors.** | **:** |

## MOTION FOR APPROVAL OF COMPROMISE PURSUANT TO RULE 9019 OF THE FED. RULES OF BANKR. PROCEDURE

COMES NOW the Chapter 7 Trustee, Kevin R. McCarthy, ("Trustee") pursuant to Rule 9019(a) of the Fed. Rules of Bankr. Procedure, and moves this Court to approve an agreement and compromise reached between the Trustee and Sandy Spring Bank ("SSB") with respect to the joint prosecution of related claims and an agreed disposition and allocation of any net recoveries resulting from such prosecution of claims. The Trustee represents that the proposed agreement and compromise are in the best interests of this estate for the reasons set forth hereinbelow.

1.      The Debtor Blue Ridge Arsenal at Winding Brook, LLC ("BRAWB" or "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on September 18, 2017, and Donald F. King was thereafter appointed interim Chapter 7 trustee. Subsequently, Donald F. King resigned as a Chapter 7 Trustee and thereafter, Kevin R. McCarthy was appointed as the interim Chapter 7 Trustee herein and continues to serve in that capacity.

2.      Prior to the filing of its Chapter 7 petition herein, the Debtor was primarily engaged in the business of operating a firearms retail store and shooting range located at 11547 Lakeridge Pkwy., Ashland, VA 23005 (the "Business Premises").  The Debtor ceased all

business operations on or about July 21, 2017 due to the termination of the lease and seizure of

the Business Premises and all contents by the landlord, Winding Brook Range, LLC

("Landlord"). The Landlord's seizure included a taking of machinery, equipment and fixtures

utilized in the operation of the Debtor's shooting range (the "Business Assets").

3.      At the time of the Landlord's termination of the Business Premises lease and the

seizure of Business Assets, the Debtor had been operating its firing range for less than one year.

Construction and outfitting of the firing range and related facilities was completed by the Debtor

only in mid to late 2016 and at a cost of approximately $1.5 million dollars.

4.      The $1.5 million dollar cost of constructing and outfitting the firing range

operated by the Debtor was financed in principal part by several loans made by SSB to the

Debtor commencing in August of 2016. To secure the loans made by SSB, the Debtor granted

SSB a first priority security interest in and to substantially all of its assets, including goodwill,

general intangibles and all equipment, furniture and fixtures. The security interests were validly

perfected by SSB as of August of 2016.

5.      The Landlord's termination of the lease of the Business Premises, and its related

seizure of the Business Premises and Business Assets, apparently arose from an earlier 2017

judgment for possession obtained by the Landlord in the prosecution of unlawful detainer

proceedings against the Debtor arising out of claimed defaults with respect to payment of rent

under the lease. Notwithstanding the Landlord's prosecution of the unlawful detainer action and

the subsequent entry of a judgment for possession, the Debtor and Landlord entered into an

agreement of forbearance under which the Landlord agreed not to take any action in execution of

the judgment of possession until September 19, 2017 at the earliest. Despite this agreement of

forbearance, the Landlord acted without notice to the Debtor (except for a lease termination

notice sent by overnight delivery on July 19, 2017) or SSB, seizing possession of the Business

Premises and all Business Assets on or about July 20, 2017, locking out the Debtor, terminating

the lease of the Business Premises, and effectively shuttering the Debtor's business operations.

The effect was to cost the Debtor the entirety of the value of its business operations and to incur

a total loss of the $1.5 million dollars spent constructing and equipping the firing range.

6.      In addition to violating its agreement of forbearance with the Debtor, the

Landlord additionally breached material covenants of a written agreement made by and among

the Debtor, Landlord and SSB with respect to potential defaults under the lease of the Business

Premises. On or about August 23, 2016, the Debtor, Landlord and SSB entered into a certain

Collateral Assignment of Lease and Landlord Waiver ("Landlord Waiver") under which, the

Landlord expressly agreed not to take any action with respect to any default under the lease of

the Business Premises without first providing written notice to SSB and a sixty (60) day

opportunity to cure. The Landlord failed to provide SSB *any* notice of any kind prior to i) the

filing and prosecution of its unlawful detainer proceedings, and ii) its termination of the lease

and seizure of the Business Premises and Business Assets. The result of the Landlord's actions

was to cause the Debtor's bankruptcy filing and the loss of virtually the entirety of the $1.5

million in loans made to the Debtor by SSB to facilitate build out and equipping of the firing

range business.

7.      The Trustee has succeeded to all rights and claims of the Debtor upon the filing of

the Chapter 7 petition herein, and has determined that the Landlord's termination of the Business

Premises lease and the seizure of the Business Assets was in violation of an express agreement of

forbearance then existing as between the Landlord and the Debtor. The Trustee further believes

that the Landlord's seizure of the Business Premises and Business Assets constitutes potentially

avoidable transfers of property of the Debtor.  The Trustee further believes that any lien of the

Landlord is avoidable under 11 U.S.C. 545(4) and may be preserved for the benefit of the estate

under 11 U.S.C. 551.

8.      The potential claims of the Trustee and SSB against the Landlord as referenced

herein arise from a common set of facts and result in an ultimate injury measured by the

complete loss of the Debtor's costs of constructing and outfitting the firing range and SSB's

coextensive loss of the $1.5 million dollars in loans made to the Debtor to facilitate such

construction and outfitting. While claims exist as to both the estate *and* SSB, the potential

measure of recovery is the same as to both.

9.      At the time of filing of the Chapter 7 petition herein, the Debtor had no money on

deposit, and no liquid assets of any kind that could be used to generate funds sufficient to fund

litigation likely required to effect a recovery with respect to the claims identified herein. The

Trustee is not currently in possession of funds sufficient to engage separate counsel to pursue

potential causes of action available to the Trustee.

10.     Because the damages associated with the Landlord's actions are coextensive to

both SSB and the estate, and because SSB held a validly perfected security interest in and to

substantially all assets of the Debtor at the time of the Landlord's actions and the Chapter 7 filing

herein, the Trustee has entered into an agreement with SSB to jointly prosecute their related

claims as identified herein and to allocate any recoveries generated therefrom.

11.     Under terms of the agreement, the firm of Henry & O'Donnell, P.C. ("H&O"),

which currently serves as counsel to SSB, shall be jointly retained by the Trustee and SSB to

pursue recovery of their related claims relating to a wrongful termination of the Debtor's lease of

the Business Premises and related seizure of the Business Assets. The related claims of SSB and

the Trustee shall be prosecuted jointly by H&O with net proceeds from any recoveries to be

allocated seventy-five percent (75%) to SSB and twenty-five percent (25%) to the Trustee. SSB

shall not receive any further distribution from such net proceeds based on any claim filed by SSB

against the estate. Net proceeds is understood by the parties to be the gross amount of any

monies collected or recovered in connection with the claims outlined herein, less all costs and

fees incurred by counsel or the parties in connection with the prosecution of such claims.

12.     The proposed compromise also shall resolve a potential lien circularity issue

between the Trustee and SSB.  The Trustee understands that the Landlord contends not all of

SSB's collateral was subject to the Landlord Waiver.  Under 11 U.S.C. 545(4) the Trustee could

avoid a lien of the Landlord on any property of the estate not subject to the Landlord Waiver and

preserve the avoided lien for the benefit of the estate.  In the Trustee's business judgment, given

the lack of practical alternatives for the estate, the allocation of 25% to the estate of the net

proceeds from recoveries of claims of SSB and the Trustee against the Landlord, which will

include any Chapter 5 claims held by the estate under 11 U.S.C. 545(4) and 547, is reasonable.

13.     The agreement and proposal between the Trustee and SSB to jointly pursue and

allocate potential recoveries from the prosecution of related claims is a compromise of related

claims and interests in and to the value of the Debtor's assets used in operation of the firing

range. Injuries recoverable under state law theories of breach of agreements are tied to tangible

and intangible business assets owned by the Debtor at the time of the Landlord's taking. All such

assets were subject to the pre-petition lien of SSB, including any proceeds of any cause of action

existing on behalf of the Debtor as against the Landlord.[1]

---

[1] The definition of "general intangibles" under Virginia's version of the UCC includes all "things in action."
Va. Code Ann. § 8.9A-102.

14.     A compromise of claims and interests in and to potential recoveries which may be coextensive and/or subject to competing priorities with one another is permissible as a compromise under Rule 9019 of the Fed. Rules of Bank. Procedure so long as such agreement and compromise are in the best interests of the estate. Courts in this jurisdiction have held that the factors governing approval of such a compromise consist of:

> … a fairly uniform and liberal standard. In summary, the court is to consider the probability of the trustee's success in any ensuing litigation, any collection difficulties, the complexity, time and expense of the litigation, and the interests of creditors with proper deference to their reasonable views.

In re Austin, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995).

15.     The litigation necessary to recovery of claims identified herein is expected to require substantial discovery and trial preparation. Upon information and belief, the Landlord re-opened the firing range after its termination of the lease and seizure of the Business Premises and Business Assets and is continuing to operate the business. Factors relating to the Landlord's actions in reopening and operating the Debtor's business are potentially relevant to the issues of liability and damages, and may lead to identification of third parties liable for injuries sustained by the Debtor and SSB as identified herein. As noted above, the estate is currently without sufficient funds to retain and employ counsel to pursue potential causes of action, and to the extent any actions were pursued and recovered, SSB's pre-petition lien in and to substantially all assets of the Debtor raises issues of claims as between the estate and SSB as to any recovery. Because SSB is the principal secured lender in this case, and because its $1.5 million in loans made to the Debtor were used specifically to construct and equip the Debtor's firing range business, an agreement to utilize SSB's counsel to jointly pursue claims under a recovery-splitting agreement as set forth herein is in the best interests of this estate.

16.     The agreement reached herein between the Trustee and SSB has been the result of arms-length negotiations, and under the Trustee's business judgment, is in the best interests of this estate.

WHEREFORE Trustee prays that this Honorable Court approve the proposed agreement and compromise of potential claims as between the Trustee and SSB as identified herein, and that your Trustee have such other and further relief as this Court may deem just.

/s/ Kevin R. McCarthy
Kevin R. McCarthy, VSB 14273
McCARTHY & WHITE, PLLC
8508 Rehoboth Court
Vienna, VA 22182
(703) 770-9261
krm@mccarthwhite.com
Attorneys for the Trustee

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of January, 2019 I served a copy of the foregoing through the court's ecf system on all registered ecf participants who have appeared in this case.

/s/ Kevin R. McCarthy
Kevin R. McCarthy, Attorney for Trustee